UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JACK PHELPS, ET AL.** | **CIVIL ACTION NO. 09-1869** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **STEIN MART, INC.** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 13] filed by Defendant Stein Mart, Inc. ("Stein Mart"). For the following reasons, the motion is DENIED.

**I.    FACTUAL AND PROCEDURAL HISTORY**

This case arises out of an alleged slip and fall accident inside the Monroe, Louisiana Stein Mart store.

Plaintiffs Jack and Sherry Phelps ("the Phelps") allege that, on October 7, 2008, Mr. Phelps went to Stein Mart to purchase two sweater vests and slipped and fell inside the entrance. Although it was raining outside at the time of the accident, there is no evidence that there was water on the floor where Mr. Phelps slipped.

The store's floor was installed sometime before 1999 and consisted of 12" by 12" polished "Crossville A900 Mica" tiles. The manufacturer of "Crossville A900 Mica" tiles lists the "coefficient of friction"[1] of the tiles it sells. Tom Montour, whose company installed Stein Mart's

---

[1] The coefficient of friction is "the ratio of the tangential force that is needed to start or to maintain uniform relative motion between two contacting surfaces to the perpendicular force holding them in contact." Webster's Third New International Dictionary 438 (1993). The lower the coefficient of friction, the less friction there is between two surfaces. In other words, if a surface has a low coefficient of friction, the surface is smooth and slippery.

tiles, averred that the manufacturer's listed coefficient of friction of Crossville A900 Mica tiles is "greater than 0.70," while Stein Mart's expert testified that it is 0.60. [Doc. No. 13-3, p. 63].

On October 1, 2009, the Phelps filed suit in the Fourth Judicial District Court, Parish of Ouachita, against Stein Mart for negligence, alleging, among other things, that the tiles were slippery and that their presence created an unreasonable risk of harm.

On October 30, 2009, Stein Mart removed the case to this Court.

On January 7, 2011, Stein Mart filed a Motion for Summary Judgment asserting that the floor was not defective and that, even if it was defective, Stein Mart did not create the defect or have actual or constructive notice of the defect. [Doc. No. 13]. The Phelps filed a response, and Stein Mart filed a reply. [Doc. Nos. 15 & 16]. The parties subsequently filed Motions in Limine, which remain pending in this case. [Doc. Nos. 17 & 24].

## II.    LAW AND ANALYSIS

### A.    Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

    **B.    Merchant Liability**

The Phelps have asserted a negligence claim against Stein Mart which is analyzed under Louisiana's merchant liability statute, La. Rev. Stat. 9:2800.6. Stein Mart asserts that it is not liable because there is no evidence that the condition of the tiles created an unreasonable risk of harm, that it either created or had actual or constructive notice of the condition prior to October 7, 2008, or that it failed to exercise reasonable care.

In order to prove merchant liability in a slip and fall case, a plaintiff must prove the usual negligence requirements: "(1) the conduct in question was the cause-in-fact of the resulting harm; (2) defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; [and] (4) the risk of harm was within the scope of protection afforded by the duty breached." *Peterson v. Gibralter Sav. & Loan*, 98-C-1601 & 1609 (La. 5/18/99), 733 So.2d 1198, 1203-04. A plaintiff must also prove the elements of the merchant liability statute:

> (1)    The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2)    The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

3

    (3)    The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

LA. REV. STAT. § 9:2800.6(B); *Cates v. Dillard Dep't Stores, Inc.*, 624 F.3d 695, 696 (5th Cir. 2010).

> "Constructive notice" means the claimant has proved that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

§ 9:2800.6(C)(1). A claimant who shows that a condition existed at the time of the fall and "for some time before the fall" has carried the burden of proving constructive notice. *White v. Wal-Mart Stores, Inc.*, 97-C-0393 (La. 9/9/97); 699 So.2d 1081, 1084.

### 1. Unreasonable Risk of Harm and Reasonable Foreseeability

The Phelps present evidence that the tiles inside the store's entrance were slippery and created an unreasonable risk of harm. They point to the deposition testimony of Stein Mart's expert, Dr. Mike James ("Dr. James"), and submit the affidavit of their own expert, Dr. Leighton Sissom ("Dr. Sissom"). Dr. James testified that he performed 20 "drag tests"[2] on the tiles and determined that the average coefficient of friction of the tiles was 0.52. However, two of Dr. James' tests

---

[2]Stein Mart describes the drag test as follows:

A testing material is used, with a known weight applied to the material. Thereafter, the material is attached to a weight scale or dynamometer, and tension is applied until the material begins to move across the surface to be tested. At the moment that the material "breaks" traction and begins to move, a reading is taken from the scale. The reading is then divided by the known weight, which yields the coefficient of friction. Experts for both parties utilized this same method.

[Doc. No. 17, p. 10].

revealed a coefficient of friction of 0.45 and 0.48. Dr. Sissom also conducted drag tests on the subject tiles and determined that the average coefficient of friction of the tiles was 0.48. The parties agree that the American Society for Testing and Materials ("ASTM"), the Occupational Safety and Health Administration, the American National Standards Institute, and Underwriters Laboratories ("UL") all require a coefficient of friction of 0.50 or greater for workplace environments.[3] According to Dr. Sissom, a coefficient of friction of 0.40 to 0.49 is considered "dangerous" by the ASTM and UL. Dr. Sissom, therefore, avers that the tiles were dangerous and created an unreasonable risk of harm because the tiles' average coefficient of friction was less than 0.50.

Stein Mart argues that Dr. Sissom's affidavit contradicts his deposition testimony that he had "no way to say . . . one way or the other" whether it was "possible [or] conceivable that at the time of the accident the floor did, in fact, have a coefficient of friction at or exceeding .50" and that there was no way he could "definitively" say that "at the time of the accident the floor . . . had a coefficient of friction below .50" because he could not "reproduce the condition of the floor at the time of the accident." [Doc. No. 13-3, p. 47]. The Court is not persuaded that Dr. Sissom's affidavit contradicts his deposition testimony. In his deposition, Dr. Sissom merely indicated that he could not say with 100 percent certainty that the coefficient of friction of the tiles was less than 0.50 on October 7, 2008. However, Dr. Sissom consistently opined that, based on the drag tests, the coefficient of friction of the tiles was less than 0.50 at the time of his tests, and that, based on his expertise, it would have been the same on October 7, 2008, and six months prior to that date.

---

[3] According to Stein Mart, there are no published standards for flooring used by the general public. However, Stein Mart does not appear to dispute that a jury could find that the tiles created an unreasonable risk of harm if the coefficient of friction of the tiles was less than 0.50.

Stein Mart also argues that "[a]ccording to the affidavit of Mr. Montour, his company installed the subject tile, and that the tile had a manufacturer listed coefficient of friction of greater than .7." [Doc. No. 13-2, p. 9]. However, Montour also averred that the tiles were installed more than 10 years prior to Mr. Phelps' alleged slip and fall, and Dr. James and Dr. Sissom testified that the coefficient of friction decreases with age when there is a build-up of wax or polish. Even if the coefficient of friction was greater than 0.70 when the tiles were installed, the expert testimony provides evidence that the coefficient of friction of the tiles decreased in the ensuing decade. Under these facts, viewed in the light most favorable to the Phelps, there remains a genuine issue of material fact whether the condition of the tiles created an unreasonable risk of harm. Additionally, one could reasonably infer, based on the location of the tiles and their alleged slippery condition, that a patron could slip and fall on the tiles. Therefore, there also remains a genuine issue of material fact whether that risk of harm was reasonably foreseeable.

### 2. Actual or Constructive Notice

The Phelps present evidence that Stein Mart had constructive notice of the alleged slippery condition of the tiles prior to October 7, 2008. Dr. Sissom averred that the tiles exhibited a coefficient of friction of less than 0.50 for at least six months prior to October 7, 2008. One could infer that if the tiles were unreasonably dangerous for six months, Stein Mart should have known of their slippery condition during that period. *See White*, 699 So.2d at 1084. Therefore, there remains a genuine issue of material fact whether Stein Mart had constructive notice of the alleged slippery condition of the tiles prior to October 7, 2008.[4]

---

[4] Although the Court finds that the Phelps have presented evidence of at least constructive notice, the Phelps indicate that they have recently propounded discovery on Stein Mart related to whether Stein Mart also had actual notice. The Court issues no opinion as to whether the Phelps

6

Stein Mart argues that the Court should somehow disregard the Phelps' temporal showing because "Rick Savage, the manager of the store in question, testified that there was no history of accidents on the floor at th[e] store" and that "Plaintiff[s] have produced no evidence to the contrary." [Doc. No. 20, p. 7]. While Savage's testimony is some evidence that Stein Mart did not have actual or constructive notice of the alleged slippery condition of the tiles, his testimony is not conclusive. Because Dr. Sissom averred that the tiles exhibited a coefficient of friction of less than 0.50 for at least six months prior to October 7, 2008, Stein Mart is not entitled to summary judgment on this ground.

Stein Mart also argues that there is no evidence that it created the slippery condition of the tiles. However, because the Court finds that there remains a genuine issue of material fact whether Stein Mart had constructive notice of the alleged slippery condition of the tiles prior to October 7, 2008, the Court need not reach this question. *See* § 9:2800.6(B)(2) (requiring proof that a defendant either "created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence").

### 3. Reasonable Care

Finally, Stein Mart admits that "if the floor is known to be dangerous, . . . it should be replaced." [Doc. No. 20, p. 8]. Because there remain genuine issues of material fact whether the condition of the tiles created an unreasonable risk of harm and whether Stein Mart had constructive notice, there also remains a genuine issue of material fact whether Stein Mart exercised reasonable care.

---

are entitled to such discovery. However, the Phelps are not precluded from presenting evidence of actual notice at trial if such evidence is obtained.

**III.     CONCLUSION**

For the foregoing reasons, Stein Mart's Motion for Summary Judgment [Doc. No. 13] is DENIED.

MONROE, LOUISIANA, this 18th day of March, 2011.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE